(lda)

**HOWARD TRAPP**
**200 Saylor Building**
**139 Chalan Santo Papa**
**Ilagåtña, Guam 96910**
**Telephone (671) 477-7000**
**Facsimile (671) 477-2040**

Attorney for defendant
 Eric John Tudela Mafnas

FILED
Clerk
District Court

DEC 2 1 2005

For The Northern Mariana Islands
By_____
          (Deputy Clerk)

## DISTRICT COURT FOR THE NORTHERN MARIANA ISLANDS

------------

| | |
|---|---|
| UNITED STATES OF AMERICA,     ( | Criminal Case No. CR 04-00038 |
| )  | |
| Plaintiff,   ( | DEFENDANT ERIC JOHN TUDELA |
| ) | MAFNAS'S DECLARATION IN |
| vs.      ( | SUPPORT OF MOTION TO |
| ) | DISMISS THE INDICTMENT |
| ERIC JOHN TUDELA MAFNAS and  ( | |
| CHARLEY K. PATRIS,     ) | |
| ( | |
| Defendants.   ) | |

------------

I, Eric John Tudela Mafnas, declare that I am one of the defendants in this proceeding.

2.    In the early morning hours of August 26, 2005, I was escorted to Guam from Saipan (via Continental Airlines) by five United States Marshals. I was constrained by a mechanical restraining device which wrapped entirely around my waist, connecting to handcuffs that locked both my wrists in a parallel position projecting forward.

3.    Upon my arrival on Guam I was met by Guam Corrections Officers.



(DEFENDANT ERIC JOHN TUDELA MAFNAS'S DECLARATION . . . )
Criminal Case No. CR 04-00038

One of the Guam Corrections Officers shackled my ankles tightly with heavy leg irons, removed the mechanical restraining device that was wrapped around my waist, and restrained me again around my waist using a mechanical restraining device similar to the one by which I was previously constrained. The Guam Corrections Officers escorted me into a white van and transported me to the Guam Department of Corrections in Mangilao ("DOC"). It was made known to me sometime later that DOC was a prison for local, Guam inmates convicted for criminal offenses.

4.     Upon my arrival at DOC, I was taken to a restroom area which consisted of a slow, painful walk up an inclined hallway and up a steep staircase. The heavy leg irons hurt my ankles. In the restroom area, I was subjected to a strip search, an inspection of my entire naked body and rectal area. Upon completion of the strip search, I was again placed in heavy leg irons and waist restraints and escorted to the Office of the Prison Warden. The prison warden introduced himself as Francisco Crisostomo, who told me that I will be going to a location called "Post 6." Still constrained by leg irons and waist restraints, I was escorted to Post 6. Again, the heavy leg irons hurt my ankles.

5.     Upon my arrival at Post 6, I was met by corrections officers and led directly into a small hot room where I was once again subjected to a strip search, an inspection of my entire naked body and rectal area. Upon completion of the strip search, I was greeted by the officer in charge of Post 6 who introduced himself and his two

2

(DEFENDANT ERIC JOHN TUDELA MAFNAS'S DECLARATION . . . )
Criminal Case No. CR 04-00038

officers, and who told me that Post 6 is a locked down facility, a maximum security

facility, utilized to punish *inmates* who break the rules and who give officers a hard time;

that the *prisoners* at Post 6 are *inmates* who have been convicted of serious crimes; that

telephone calls are only afforded once a month for only ten minutes and that when I do call,

I am to talk about important matters and not to waste my time asking how so-and-so is

doing; that I will be offered fresh air time for only twenty to thirty minutes every other

day, and that other than that I will be locked down for 24 hours; that whenever I step out

of my cell for fresh air, visitation, to use the telephone, or to go to the day room, I will be

shackled in leg irons; and that I will be going to a cell in the upper tier of the South Wing.

      6.    On August 26, 2005, I was confined to a hot cell in the upper tier of

South Wing measuring approximately 5 by 8 feet where I spent my entire time alone. My

cell had a toilet with a small sink that barely dribbled water, a raised concrete slab attached

to the inner wall of my cell (about 6½ feet away from the door), a 4 feet ceiling with a

fluorescent light fixture (surface mounted), and a mattress made of polyester fibers. My

cell also had a narrow window with 3 ventilation louvers above it, but the louvers were

each sealed with sheet metal, cutting off air circulation and prohibiting sunlight from

entering my cell. There was absolutely no outside view, and the only way I could keep

track of time was to remember when I received my last meal. The South Wing was

Maximum Security inhabited by inmates.

3

**(DEFENDANT ERIC JOHN TUDELA MAFNAS'S DECLARATION . . . )**
Criminal Case No. CR 04-00038

      7.    I was in my South Wing cell for 43 days, was subjected to immense heat, 24 hours a day, seven days a week. The immense heat came from the walls, the ceiling, and the floor of my cell. The lack of any ventilation or cooling contributed to the immense heat, and the sheet metal which tightly sealed off the window and ventilation louvers of my cell only made the heat inside worse, especially during the day. The only way that I could cool myself down was to lay on the floor, by the door, to catch a draft which came through a small gap under the door. Laying like this put my head only inches from the toilet, and caused me to inhale a reeking and unpleasant odor. Hoping to catch a stronger draft, I bent an empty cardboard cereal box in a semi-circular shape just like all the other maximum security *inmates* did and placed it between the gap under the door, a "wind catcher" or "wind breaker" as the *inmates* would call it, but to no avail. As a result, I lived in constant sweat, I rapidly lost weight, and I was made incapable of uninterrupted sleep, thereby negatively affecting my physical and mental well-being. There was no justification for this.

      8.    For 43 days in my South Wing cell I lived in constant illumination. The cell lighting was 24 hours a day, seven days a week. The constant illumination of my cell lighting contributed to the immense heat that I suffered and endured. As a result of being subjected to live in constant illumination, I was made incapable of uninterrupted sleep, and I lived in constant sweat, significantly affecting my physical and mental well-being.

4

(DEFENDANT ERIC JOHN TUDELA MAFNAS'S DECLARATION . . . )
Criminal Case No. CR 04-00038

9.    For 43 days in South Wing, I was allowed only one shower for approximately five to eight minutes each day, on average, during the evening hours. Shower time consisted of a short walk down the corridor of South Wing into a filthy shower stall. From the time I finish to the moment I entered my cell I was already dripping with perspiration again. As a result, I was forced to live in constant perspiration and undue physical discomfort, significantly affecting my physical and psychological well-being and making me incapable of any uninterrupted sleep.

10.    During my entire 43-day stay in South Wing, I was not let out of my cell for "fresh air" for no more than approximately twenty (20) to thirty (30) minutes, *every other day*. I remained isolated from other prisoners and was constrained by heavy leg irons. Other than that, I was locked down 24 hours, seven days a week. "Fresh air" consisted of a slow walk up and down the South Wing's stair case to a day room or to a high, four-cornered walled yard and back. The heavy leg irons, which remained shackled around my ankles throughout my entire "fresh air" time, caused me pain and undue physical discomfort. I could not enjoy whatever "fresh air" time that was given to me, because of the pain in my ankles caused by the constant use of the heavy leg irons.

11.    On or about October 8, 2005, I was transferred to the East Wing of Post 6. Local inmates in "Disciplinary Segregation" for escape, assault, and other violations comprised the East Wing. With the exception of a narrow shower stall inside the East

5

(DEFENDANT ERIC JOHN TUDELA MAFNAS'S DECLARATION . . . )
Criminal Case No. CR 04-00038

Wing cells, the conditions in East Wing are substantially the same as those in the South Wing, both in duration and degree of restriction.  An empty cardboard cereal box still serves as a "wind breaker" or "wind catcher" beneath the cell door to catch a draft from the corridor.  I am still shackled in heavy leg irons every time I leave my cell.  "Fresh air" is still offered every other day for approximately twenty (20) to thirty (30) minutes in heavy leg irons.  I still live in constant cell lighting.

　　　12.    During my entire stay in the bottom tier of East Wing I have been confined to a "hot" cell, but this time I am confined with another detainee, making it even more difficult for me to pace around, and especially to use the toilet, because my cell mate sits and lays on the floor just inches therefrom.  Whenever my cell mate uses the toilet, I am forced to inhale the odor of his feces and urine, which lingers in the cell, because there is no adequate ventilation or circulation of clean air.  Not only am I called upon to live in constant sweat, but I have lost my appetite, so that I cannot finish consuming my meal and often give it to the *inmate* across from my cell.

　　　13.    At all relevant times during my confinement at Post 6 I have been deprived of any visitation with my family.  Upon my arrival at post 6, I properly filled out a "visitation form," and I completed the necessary requirements needed to ensure clearance and approval, but I have never received a response.  A few times I submitted a so-called "remedy request" to the officers, asking for the status on my visitation listing, but I have

6

(DEFENDANT ERIC JOHN TUDELA MAFNAS'S DECLARATION . . . )
Criminal Case No. CR 04-00038

never gotten any response. On November 1, 2005, I received a response, but it was only to inform me that my visitation listing had been faxed to the United States Marshal.

14.    During my entire detention time in Post 6 I have had no access to any form of exercise, visitation, recreation, regular library, law library, religious services, adequate ventilation, or social interaction.

I am still here in the East Wing under the same conditions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 19, 2005, at Mangilao, Guam.

Respectfully Submitted,

ERIC JOHN TUDELA MAFNAS

(Documents\Declaration.EMafnas)

7

## DECLARATION OF SERVICE

I, Charlene C. Cruz, declare that I am the administrative assistant employed in the office of Howard Trapp Incorporated, Howard Trapp, Esq., the attorney for defendant Eric John Tudela Matnas herein, and that I served the document to which this declaration is annexed on the following:

Jamie D. Bowers, Esq., Assistant United States Attorney, by transmitting a facsimile thereof to him at (670) 236-2985 and by mailing a copy thereof to him at P.O. Box 500377, Saipan, MP 96950, his last known facsimile telephone number and mailing address, respectively, all on December 20, 2005; and

Perry B. Inos, Esq., the attorney for defendant Charley K. Patris, by transmitting a facsimile thereof to him at (670) 235-9007 and by mailing a copy thereof to him at P.O. Box 502017, Saipan, MP 96950, his last known facsimile telephone number and mailing address, respectively, all on December 20, 2005.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 20, 2005, at Hagåtña, Guam.

_____
CHARLENE C. CRUZ