# UNITED STATES DISTRICT COURT
# FOR THE
# NORTHERN MARIANA ISLANDS

*************************************************************************

CR- 04-00038-001

February 22, 2006
9:20 a.m.

## UNITED STATES OF AMERICA -V- ERIC JOHN TUDELA MAFNAS

PRESENT:    HON. ALEX R. MUNSON, Chief Judge Presiding
SANAE SHMULL,  Court Reporter
K. LYNN LEMIEUX, Courtroom Deputy
TIMOTHY MORAN, Assistant U. S. Attorney
HOWARD TRAPP,  Counsel for Defendant
ERIC JOHN TUDELA MAFNAS, Defendant

F I L E D
Clerk
District Court

FEB 22 2007

For The Northern Mariana Islands
By_____
(Deputy Clerk)

PROCEEDING:    SENTENCING

Defendant was present with Defense Attorney Howard Trapp. Government by Timothy Moran and Jamie Bowers, AUSAs. Also present was U.S. Probation Officers Margarita Wonenberg and Melinda Brunson. FBI Special Agent Joe Arthur was also present.

Attorney Trapp made objections to late filing of suggested enhancements to the PSR by the Government.  Government argued.

There were objections to the Presentence Investigation Report and these objections were discussed.

Government, by AUSA Jamie Bowers,  argued the enhancement application of a 2D1.1 to the guidelines.

Government called witness:

**CARL CABRERA**. DX.  (No CX.)

**EDWARD MANALILI** (Police Officer, DPS). DX.  Government moved to admit Exhibit 1 into evidence; no objection, Court so ordered.  (No CX.)

Government argued for the enhancements. Attorney Trapp argued against the enhancements. Court, after hearing all argument, **DENIED** both enhancements.

Court adopted the presentence investigation report, **as amended**,  and instructed the Clerk to file the report, under seal, and that the report be made available if the judgment is appealed. The

probation officer's recommendation shall also be placed under seal. No objection by the parties.

Government had no objection to the advisory guidelines that the Court intends to be guided; Defense had no objections. Court adopted the advisory guidelines.

Government called a witness in relation to "harm to the community":

**JOHANNES TAIMANO**. (Police Officer, DPS). DX. (No CX.)

Government recommended that this defendant receive a sentence of **235 months** and a fine of **$50,000**. Defense recommended a sentence at the low end of the guidelines and that if at all possible, that he be confined in a facility at Sheridan, Oregon.

Court recessed at 11:00 a.m. and reconvened at 11:15 a.m.

**SENTENCE:** Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant **ERIC JOHN TUDELA MAFNAS** is hereby sentenced to **235 months** imprisonment . Sixty months as to Count I; 120 months as to Count II; 235 months as to Count III; 235 months as to Count IV; 60 months as to Count V; and 60 months as to Count VII. The sentences shall be served concurrently. The defendant will receive credit for time served. After release from imprisonment defendant shall be placed on **four years** supervised release. The term of supervised release will require that the defendant comply with the following conditions:

1. The defendant shall not commit another federal, state, or local crime;

2. The defendant shall not unlawfully possess a controlled substance and shall refrain from any unlawful use of a controlled substance. He shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter not to exceed eight tests per month as directed by the U.S. Probation Office;

3. The defendant shall submit to the collection of a DNA sample at the direction of the U.S. Probation Office;

4. The defendant shall comply with the standard conditions of supervised release as set forth by the U.S. Sentencing Commission;

5. The defendant shall be prohibited from possessing a firearm or other dangerous weapon or having such weapon(s) at his residence;

6. The defendant shall participate in a program approved by the U.S. Probation Office for substance abuse, which program may include testing to determine whether he has reverted to the use of drugs. The defendant shall also make co-payment for the program at a rate to be determined by the U.S. Probation Office;

7. The defendant shall seek and maintain gainful employment; and

8.  The defendant shall complete 400 hours of community service under the direction of the U.S. Probation Office.

It was further ordered that the defendant pay to the United States a special assessment fee of **$600** to be paid immediately after sentencing.  No fine was imposed.

No objection to the sentence by the attorneys.  Defendant was advised that he had 10 days in which to file an appeal to the sentence imposed.  Further, he was advised that if he cannot afford an attorney for the appeal the Court will appoint one for him.

Attorney Trapp requested that the defendant be allowed to visit his grandmother, who is frail and not expected to live much longer, before he is transported to the mainland.  Court ordered that he be allowed to visit her, in the accompaniment of the U.S. Marshal, for no more than 30 minutes.

Defendant was remanded to the custody of the U.S. Marshal.

Adj. 11:30 a.m.

K. Lynn Lemieux, Courtroom Deputy

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

DEPARTMENT OF PUBLIC SAFETY
*Investigation Division*
*Saipan, CM 96950*

DATE: 01/31/85

# MEMORANDUM

TO    :   All Personnel

FROM  :   Director of Public Safety

SUBJECT : Use of Firearm

All DPS personnel must abide department regulations, and the law in the use of firearms, especially in discharging or shooting. It is the policy of this department that whenever a member of this department uses a firearm, investigation shall be initiated by a supervisor.

This initial report of the supervisor will then be forwarded to the Internal Affairs to continue the investigation.

Privately registered firearms such as: .22 Caliber rifles and 410 Guage shotguns *are also applicable to this policy.*

Upon determination that the case warrants criminal action the case will be immediately transferred to the Investigation Unit for follow-up. The Internal Affairs will monitor the case, and ascertain if any departmental rules or regulations are violated.

Violation of this policy can result in more serious disciplinary action than an oral or written reprimand, it will be suspension or termination from employment. In the event that criminal action is pursued for possible prosecution of a criminal offense and resulted with insufficient evidence for prosecution then this policy shall be applied administratively for action of suspension or termination.

This Order repeal General Order 005-82, April 26, 1982, Section 1, Use of Firearm by Police Officer through its entirety, and General Order 019-82, November 03, 1982, Policy for the Immediate Possession of Firearm through its entirety.

FELIX B. CABRERA
Director, DPS

25


GOVERNMENT
EXHIBIT
1
04-00038
2-22-06

Case 1:04-cr-00038   Document 170-5   Filed 02/22/2006   Page 5 of 12

GENERAL ORDER NO. 85-01

**COMMONWEALTH OF THE
NORTHERN MARIANA ISLANDS
DEPARTMENT OF PUBLIC SAFETY
SAIPAN**

| GENERAL ORDER | Date of Issue: | Effective: | No. |
|---|---|---|---|
| | 01/31/85 | 02/18/85 | 85-01 |

| Reference : | | Recinds: |
|---|---|---|

Index As:

Firearms for Police Service, Use of Firearms.

**SUBJECT** : Firearms for Police Service. Use of Firearms.

**PURPOSE** : To establish guidelines relating to firearms authorized for use by Department of Public Safety personnel, and the investigations of cases in which death or injury results from the use of firearms by Department personnel.

THIS ORDER CONSISTS OF THE FOLLOWING NUMBERED SECTIONS:

I.     OBJECTIVE
II.    POLICY
III.   GOVERNMENT OWNED FIREARMS
IV.    AUTHORIZED AMMUNITION
V.     INSPECTION PROCEDURES
VI.    CARE, CUSTODY AND OTHER RESPONSIBILITIES
VII.   SUBMACHINE GUN
VIII.  JUSTIFIABLE USE OF FIREARMS
IX.    UNJUSTIFIABLE USE OF FIREARMS
X.     INVESTIGATIVE PROCEDURE
XI.    UNATTENDED FIREARMS
XII.   MEDICATION AND/OR ALCOHOL
XIII.  FIREARMS TRAINING



26

I.   OBJECTIVE

To ensure complete procedures concerning firearms for police personnel are established. To establish a consolidated policy concerning firearm regulations for Department of Public Safety personnel and interested parties.

II.  POLICY

Department of Public Safety police officers should be adequately armed for the protection of the general public as well as themselves. As long as members of society are victims of violent crime and officers in the performance of their duties are confronted with deadly force, it will remain an absolute necessity for police officers to be properly armed and qualified, to use deadly force. However, it is of the utmost importance, when possible, to accomplish our mission through means other than the use of firearms.

III. GOVERNMENT OWNED FIREARMS

A.   Authorized Firearms

The following firearms, which are government owned, may be issued for police service, as deemed necessary, and may be carried on the Department's inventory.

1.   .38 caliber revolver
2.   .357 magnum revolver
3.   9mm parabellum semi-auto pistol
4.   .45 caliber semi-automatic pistol
5.   Shotguns (.12 gauge)
6.   .223 caliber rifle (AR-15)
7.   .30 caliber carbine
8.   30-30 winchester rifle
9.   Automatic rifles

     a.   .45 caliber sub-machine gun
     b.   .9mm parabellum sub-machine gun
     c.   M-16 caliber rifle

27

B. Specification for Revolvers

The approved and authorized revolvers to be issued to personnel of the Department of Public Safety shall either be the .357 caliber revolver, Smith & Wesson, Model 19, or the .38 caliber revolver, Smith & Wesson, Model 15 and/or Model 60. The revolvers shall have a blue, chrome, or stainless steel finish with a four to six inch barrel for uniform patrol and a barrel length not shorter than 2 inches for plainclothes personnel and uniform personnel performing non-patrol functions. The revolvers described above shall be the standard issue. The Director at his/her discretion may cause other types and/or makes of revolvers to be issued.

IV. AUTHORIZED AMMUNITION

All ammunition used must be safe and in good condition and shall be as follow:

A. Pistol/Revolver ammunition shall be standard commercially manufactured lead ball, semi-jacketed, full jacketed, or semi-jacketed hollow point in appropriate bullet weights to match the caliber, but in no case less than 110 grains nor more than 240 grains weight. Authorized calibers are those to fit the authorized pistols and revolvers listed in Paragraph III. A. of this Order. Magnum load pistol ammunition shall not be used.

B. Rifle ammunition shall be standard commercially manufactured lead ball, semi-jacketed, full jacketed, or semi-jacketed hollow point in appropriate bullet weights to match the caliber. Authorized calibers are those to fit the authorized rifles listed in paragraph III. A. of this Order.

C. Shotgun ammunition shall be standard commercially manufactured double aught (00). Authorized calibers are those to fit the authorized shotguns listed in Paragraph III. A. of this Order.

D. The use of "wad cutter" or "reloaded" ammunition for service use is prohibited. This type of ammunition is to be used only for training purposes.

E. When carrying your duty firearm, and/or supplemental firearms, officers shall carry at least 12 rounds of ammunition for the revolver or one extra clip/magazine of ammunition for the semi-automatic.

28

F. Ammunition issued shall be turned-in for exchange six months from the date of issue, or sooner if circumstances indicate that the condition of the ammunition is adversely affected, such as exposure to inclement weather.

G. The Armory Unit shall receive the ammunition turned-in and store it for target practice.

H. All ammunition not issued by the Department shall not be used or carry when on-duty or off-duty exception to the following:

1. Target practice

2. Authorized by the Director of Public Safety or his/her designee.

V. INSPECTION PROCEDURES

A. Inspection of Department's Firearms

1. All Department's firearms are to be kept in serviceable condition at all times.

2. The Department of Public Safety Staff Inspector is charged with the responsibility of causing all Department's firearms to be inspected by the Department of Public Safety Armorer every six (6) months, or when necessary. All firearms found not to be serviceable are to be repaired or shall not be used for official duty by personnel concerned, and if no need, to the Department shall be disposed off.

3. It shall be the responsibility of all Bureau and/or Division Heads to insure that monthly firearms inspections are conducted.

a. Field Supervisor at each Precinct shall conduct firearms inspection at roll-call formation.

b. Supervisors in-charge of plainclothes units or units composed of personnel on special or temporary duty assignments are also to conduct firearms inspection before such personnel assume duty.

29

Case 1:04-cr-00038　　　Document 170-2　　　Filed 02/22/2006　　　Page 6 of 12

c. Supervisor(s) conducting firearms inspection shall pay particular attention on the following conditions and/or functions:

   1) Proper single and double action;

   2) Proper cylinder rotation and latching;

   3) Firing pins and sights (sheared pin or damaged sights);

   4) Bore and chambers (rust, dirt, pin or damaged sights);

   5) Cartridges (dents, primer, non-crimped projectile);

   6) Proper Slide action and ejection.

d. Unserviceable firearms are to be sent to the Department of Public Safety Armorer for inspection and repair.

VI. CARE, CUSTODY AND OTHER RESPONSIBILITIES

A. General Responsibilities

1. Personnel are to exercise care and caution in the safekeeping and storage of weapons and equipment to insure against loss, theft, or misappropriation resulting in accidental usage (i.e., theft from home or automobile, the use of a firearm by a minor child or any unauthorized person). Personnel suffering the loss or theft of any firearm, or issued equipment through carelessness or negligence shall be disciplined and required to pay for the replacement of same if it is item of issue. (As stated in Item XI, Unattended Firearms).

2. Upon discovery of the theft or loss of any firearm or revolver, issued equipment, a numbered police report will be written by the victimized officer to the Director of Public Safety via appropriate channels.

3. Officers must always exercise precaution concerning bystanders. Injury to innocent bystanders is not necessarily excused by the fact that the policeman would have been legally justified in shooting to accomplish arrest. The risk of death to any person should be minimized.

30

4. Generally, an officer should not shoot at a fleeing felon whom he believes to be a juvenile, unless the escape of such a felon poses a serious threat to the life of another person, in such a case he may shoot to prevent the escape of the felon.

5. Officer shall never cock their sidearm until ready to fire. An officer should not fire his/her weapon while he/she is running, because running adversely affects accuracy; rather, he/she should stop, take careful aim, fire, then continue to run if necessary.

6. In every instance where a firearm is discharged by personnel of this Department, a detailed written report shall immediately be prepared and submitted to the Director of Public Safety.

7. All unauthorized use of a firearm whether on-duty or off-duty is prohibited and is subject to appropriate disciplinary action.

8. Department owned weapons issued to individual officers shall not be loaned to anyone other than another police officer of the Department with proper authorization.

9. To destroy an animal which the officer has reasonable cause to believe is so severely injured that there is no probability that its life or usefulness can be saved, or where the officer or another is attacked by human-endangering animals, such shooting shall be recorded.

10. Display of firearms: To prevent accidental discharge, firearms shall not be unnecessarily displayed, brandished or manipulated by officers, whether within police buildings or in public.

11. Loading and unloading is to be accomplished with the utmost regard for the safety of oneself and persons in the immediate area.

B. On-Duty Status

1. All sworn police personnel when on-duty shall be in possession of their identification cards, badges, handcuffs/key, Department's service firearm, and a minimum of 12 rounds of extra ammunition for the revolver or at least one extra clip/magazine for semi-automatics. In addition, uniformed patrol officers while on duty will have

31

Case 1:04-cr-00038   Document 1705   Filed 02/22/2006   Page 7 of 12

in their possession such other gear as may be required such as batons, flashlights, whistles, mace, rain gear, etc.

2. Department's firearms shall be carried so they may be readily withdrawn from a holster.

   a. Uniformed officers are to use holsters authorized by the Department.

   b. Plainclothes officers may use any holster designed for utility and safety purposes and may be worn optionally on either the rights or left side.

3. Personnel appearing in court to testify must first unload their firearms and secure them in a depository designated for that purpose in the Office of the Court Bailiffs before entering the confines of the Court Room proper.

4. Personnel assigned to lock-up duties are not to carry firearms in the confines of the Detention Facility. Personnel not assigned to lock-up duties, who are on official business in the Detention Facility, are to unload their firearms and secure same in a depository designated for that purpose with the Duty Officer.

C. Off-Duty Status

All sworn personnel are required to be in possession of their identification cards and badges when off-duty except when the carrying of a said firearm or other police equipment would be very conspicuous or impractical due to the situation (i.e., attired in swimming suit at the beach or picnic, etc.). The weapon and equipment shall, however, be kept readily accessible at all times.

VII. SUBMACHINE GUN (Automatic Rifle)

A. Restrictions

1. Only personnel who have been trained and properly qualified to use a submachine gun, shall be authorized to use the submachine gun furnished by the Department.

2. The use of the submachine gun shall be considered an alternate to the use of the police shotgun under appropriate circumstances and is not intended as a replacement for the shotgun or high power rifle.

Case 1:04-cr-00038     Document 170-5      Filed 02/22/2006     Page 8 of 12

3. Submachine guns shall not be discharged in any situation where there exists any risk of injury to innocent person. Personnel armed with submachine guns shall withhold automatic fire rather than risk accidental injury or death.

4. The use of submachine guns, regardless of type or make, is prohibited except those issued by the Department of Public Safety.

5. Submachine guns shall not be used discriminately or in anticipation against mere threat of armed attack or resistance.

B. Procedure

1. The Director of Public Safety, Chief of Police, or his/her designee are responsible for ascertaining the competency of personnel in the use of submachine guns before authorizing the issuance of submachine guns for stakeout/apprehension raids.

2. Submachine guns to be furnished under this Order shall be carried as follows:

   a. The submachine gun shall be carried with wooden stock extended in anticipation of use except when transporting the weapon.

   b. The "open bolt" firing gun shall be carried with the bolt closed and the selector lever pointing to the "semi-automatic" position.

   c. The "closed bolt" firing gun shall be carried with a round in the chamber and the selector lever pointing to the "safe" position.

   d. The submachine gun shall be carried with the muzzle of the gun pointing either upward or downward, in a safe direction.

3. In normal operations, only one gun on any raid or stakeout shall be authorized to carry or use the submachine gun in order to minimize the risk of indiscriminate crossfire. All others are authorized to carry shotguns, carbines, or rifles on tactical needs. Additional submachine gun authorizations will be made only in accordance with this Order.

2. Should a relief from duty be deemed necessary, it shall be with compensation and not be construed to be a disciplinary action, but rather an administrative course of action for the purpose of:

   a. Relieving the officer from further performance of field duties while undergoing the emotional stress of having used deadly force.

   b. Permitting an objective investigation into the matter under a more restrained atmosphere.

   c. Maintaining the public's confidence in the police force.

3. In a case in which a relief from duty had been imposed, the officer shall be restored to his original assignment as soon as it is determined from the investigation that his/her action was justified.

B. Expeditious Investigation

1. Without sacrificing objectivity and completeness, the investigation into any duty-connected shooting resulting in death or injury shall be expeditiously conducted by the Chief of Police, supported by an investigation performed by the head of any Bureau or independent unit or any of his/her personnel prior to take over of the investigation by personnel from the Chief's office.

2. The completed investigative report upon the approval of the Chief of Police shall be forwarded to the DPS Director who will forward the report to the Attorney General for his/her review and determination whether or not the matter shall be presented to Court.

C. Summary

1. Responsible officer reports shooting incident to his/her immediate superior in a timely manner.

2. Responsible officer and his/her Superior Officer submit detailed written reports to the Director immediately.

3. Superior Officer, Director and/or Chief of Police confer to determine if the officer is to be administratively removed from duty.

4. The Chief of Police will conduct a complete formal investigation of the shooting, submit his/her findings to the Director for his/her disposition.

5. The Director and the Chief of Police shall determine if formal charges are warranted. If so, a copy of the formal report with the Director's recommendation should be forwarded to the Attorney General for his/her action.

XI. UNATTENDED FIREARMS

A. Personnel will not leave any firearm, official or unofficial, in any unattended vehicle, motorcycle, or areas of public access except when the vehicle or area is properly secured and remains within sight of the officer.

   EXCEPTION: Reference paragraph VI.A, 1, personnel are authorized to place firearms in the locked trunk of their vehicles for safekeeping when they are engaged in an activity in which it is not appropriate that they wear a firearm (i.e., attired in swimming trunks at the beach) but only for such time as they are engaged in the activity and there is no safer place available to store the firearm.

B. Personnel may lock rifles and/or shotguns in the security boot provided or in the trunk of Departmental vehicles before leaving the vehicle unattended. However this condition shall not exceed a period of 30-minutes.

C. Public access means a place or thing to which the people as a whole (the public) have permission or liberty to enter, approach, or pass to and from in the normal course of events i.e., shopping centers, beaches, parking on public streets, etc.

   An employee's office or desk of which he/she has exclusive use is not an area of public access, except by invitation. Regardless, firearms shall not be left unattended in these areas when persons other than employees of the Department are present. In no case shall a firearm be stored unattended in plain sight, nor shall they be left in an office or desk after the employee's conclusion of tour of duty.

D. Firearms stolen as a result of non-compliance with this Order, if used in the commission of a crime, or if used to inflict per-

Case 1:04-cr-00038 Document 170-4 Filed 02/22/2006 Page 9 of 12

sonal injury will result in severe disciplinary action for the officer involved.

E. Damage to or loss of a DPS-owned firearm as a result of non-compliance with this Order shall be dealt with severely, even if the firearm in question is not used in the commission of a crime.

XII. MEDICATION AND/OR ALCOHOL

Anytime an officer HAS CONSUMED ALCOHOL OR -- is taking medication, prescription or otherwise, that may affect his/her mental or physical faculties, it is that officer's responsibility to so inform his/her supervisor. If the medication produces side effects incompatible with duties requiring the bearing of arms, the supervisor shall not allow the officer to assume duties requiring the bearing of firearms or other duties that might be adversely affected.

In addition whenever an officer is off-duty, not in performance of an official assignment, he/she shall not carry a firearm or have in his/her immediate possession a firearm while consuming or under the influence of alcohol or medication.

XIII. FIREARMS TRAINING

A. All sworn police officers, unless excused for good cause by the Director, must qualify with the firearm (s) they carry for official use no less than once each year.

B. DPS will provide ammunition for qualification with all Government owned firearms.

C. The present pistol course used by DPS allows a maximum of 250 points. The following breakdown of scores shall be used with this course.

    0 to 169 points    -- NOT QUALIFIED
    170 to 219 points  -- QUALIFIED
    220 to 229 points  -- MARKSMAN
    230 to 239 points  -- SHARPSHOOTER
    240 to 250 points  -- EXPERT

D. The Bureau of Administrative Training shall schedule annual firearms qualifications of Special Order (signed by the Director) or as often as necessary to ensure compliance with this Order.

E. The firearm instructors must undergo biannual instructors recertification training.

F. All personnel to be issued police firearm (s) shall be trained in the use and maintenance of such firearm.

FELIX B. CABRERA
Director, DPS

Case 1:04-cr-00038    Document 170-5    Filed 02/22/2006    Page 10 of 12

## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
## DEPARTMENT OF PUBLIC SAFETY

### ARMORY DIVISION

My signature, hereunder, acknowledges receipt of Government property, as described hereunder, and affirmed that I shall be held responsible for its safe-keeping and proper use. In case of loss or damage, I shall be liable for payment-in-full of the acquisition cost.

DESCRIPTION: _____

Signature : _____
Name/Print : _____
Rank : _____
Division : _____
Date : _____

### CERTIFICATION

This is to certify that: _____

has been issued a firearm, as described above, and is authorized to keep/carry such firearm on a twenty-four (24) basis.

_____
Director of Public Safety, GNMI

_____
Date

_____
In-charged of Armory Division/Date

*************************************************

FIREARM RETURNED TO ARMORY

Returned By: _____

Date: _____    Time: _____

Received By: _____

Date: _____    Time: _____

Inoperable ☐    Operable ☐    Same issued weapon ☐

REMARKS:

41

---

## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
## DEPARTMENT OF PUBLIC SAFETY

### CERTIFICATION OF PROFICIENCY

DATE: _____

NAME: _____
(LAST)    (FIRST)    (MIDDLE)

RANK: _____

AL SECURITY: _____    ASSIGNED DIVISION: _____

TYPE OF FIREARM QUALIFIED: _____    TARGET SCORE: _____

SCORING QUALIFICATION

0 TO 169 POINTS = NOT QUALIFIED ............ ☐
170 TO 219 POINTS = QUALIFIED ............ ☐
220 TO 229 POINTS = MARKSMANSHIP ............ ☐
230 TO 239 POINTS = SHARPSHOOTER ............ ☐
240 TO 250 POINTS = PROFESSIONAL/EXPERT ............ ☐

_____    _____
RANGEMASTER/INSTRUCTOR    RANK    DATE

_____
DIRECTOR OF PUBLIC SAFETY    DATE

40

Case 1:04-cr-00038    Document 170-5    Filed 02/22/2006    Page 12 of 12

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
DEPARTMENT OF PUBLIC SAFETY

FIREARM INSPECTION

DATE: _____

ASSIGNED OFFICER'S NAME: _____ _____ _____
(LAST)        (FIRST)       (MIDDLE)

RANK: _____        TYPE OF FIREARM: _____

1) PROPER SINGLE AND DOUBLE ACTION          GOOD ☐  FAIR ☐  POOR ☐

2) PROPER CYLINDER ROTATION AND LATCHING     GOOD ☐  FAIR ☐  POOR ☐

3) FIRING PINS AND SIGHTS SHEARED PIN OR DAMAGED SIGHTS)   GOOD ☐  FAIR ☐  POOR ☐

4) BORE AND CHAMBERS (RUST, DIRT, PIN OR DAMAGED SIGHTS)   GOOD ☐  FAIR ☐  POOR ☐

5) CARTRIDGES (IDENT, PRIMER, NON-CRIMPED PROJECTILE)   GOOD ☐  FAIR ☐  POOR ☐

6) PROPER SLIDE ACTION AND EJECTION          GOOD ☐  FAIR ☐  POOR ☐

INSPECTED BY: _____          RANK: _____

ECTOR'S SIGNATURE: _____

REMARKS: _____

APPROVED BY (SUPERVISOR)

42